# White et al. *versus* The Commonwealth to use of White.

1. A testator, after directing the payment of his debts, provided as follows : "Then after the allowance of the one third of my property to the widow, my will is that all my children share and share alike."
   *Held,* that under the Act of April 8th, 1833, this provision constituted a devise in fee of one third of testator's real estate to the widow.

2. The Orphans' Court could not change the nature of the widow's estate by any proceedings in partition.

3. Under the above will proceedings in partition were had and two of the testator's sons went into possession of the real estate giving a recognizance to secure the amount of the valuation money to those entitled and binding themselves, as to the widow, to "pay the interest on so much thereof, as interest should be paid on . . . . . during each year of her life." In an action by the widow, on the recognizance, to recover her one third of the valuation :
   *Held,* that the words of the recognizance could not and did not change the character of the widow's interest in the fund, and that she was entitled to recover in this action the one third of the valuation put on the property.

4. The fact that the widow continued to receive the interest on her share for twenty years, without ever demanding the principal, does not estop her now from demanding the same.

May 5th, 1885. Before PAXSON, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J., GORDON and TRUNKEY, JJ., absent.

ERROR to the Court of Common Pleas of *Clearfield county :* Of January Term 1885, No. 176.

This was a scire facias, by the Commonwealth to the use of Margaret White, upon a recognizance filed in the estate of James White, deceased, to recover the principal sum secured to her in the recognizance, together with interest. Pleas, nil debet, payment with leave, etc., and tender.

On the trial, before KREBS, P. J., the following facts appeared : James White died about August 1st, 1860, leaving a will which was duly proved, on August 6th, 1860, and which contained, inter alia, the following provision :

"I will that all my just debts, as shall be by me owing at my death, together with my funeral expenses and all the charges touching the proving of or otherwise concerning this my will, shall, in the first place, out of my personal estate and effects, be fully paid and satisfied. Then my will is that the property, both personal and real, remain as now is, with my family for the term of one year. Then, after the allowance of

the one third of my property to the widow, my will is, that all my children share and share alike, including my step-son, William."

On September 24th, 1861, a writ of partition was awarded by the Orphans' Court, upon petition of James White, a son of testator, to value and partition the real estate to and among the legatees named in the will. Partition was duly made and the real estate of said testator, consisting of four pieces, was appraised at $2,970.29, which appraisement was duly confirmed. On March 17th, 1862, the court awarded the real estate of the decedent to Thomas White and James White, two of his sons, at the appraised value, and directed them to enter into a recognizance in the usual form, with sureties, for the payment of the shares of the other heirs within one year and to secure the interest of the widow. The conditional part of said recognizance read as follows : " Now, if the said James White and the said Thomas White, or their said sureties, or either of them, or their heirs, executors, &c., shall pay, or cause to be paid, to the other heirs of the said James White, deceased, their respective shares of the aforesaid valuation, as the same shall be determined according to law, and the decree of the court in this case made, and shall pay the interest on so much thereof, as interest should be paid on, to the widow of said James White, deceased, during each year of her life, in equal semi-annual installments, then the above recognition to be void, otherwise to remain in full force and virtue."

The said recognizance was approved on June 23d, 1862, and duly filed of record, and the said Thomas and James White entered into possession of the premises. The auditor appointed to ascertain the shares of the respective heirs, found that the proceeds for distribution were $2,894.04 and "sets to the widow as per decree of the court and will the one third part of this amount or $965.68." The widow was regularly paid the interest on this sum by the heirs until March, 1878, when there was a dispute as to the amount of interest due.

On September 19th, 1882, this action was brought, at the instance of Margaret White, against the recognizors, in which she claimed to recover unpaid interest on the recognizance, amounting to about $290.60, and also to recover the dower charged upon the same land, viz: the sum of $965.68. At the trial defendants proved tender of the interest to the widow and agreed to have judgment entered for plaintiff for the amount of interest due.

The court directed a verdict for the plaintiff for the entire amount of the claim, reserving the question of law as to the right of plaintiff to recover the principal sum. The jury ac-

cordingly rendered a verdict for the plaintiff for $1,403.41. Subsequently the court, after argument on the point reserved, entered judgment on the verdict. Defendants thereupon took this writ, assigning for error the action of the court.

*Frank Fielding* and *Thomas H. Murray* (*Cyrus Gordon* with them), for plaintiffs in error.—Where the meaning of a devise is uncertain, the law adopts the principles of the intestate law; for whoever claims against the laws of descent must show a satisfactory written title: Lipman's Appeal, 6 Casey, 180; Nesbit's Appeal, 25 P. F. S., 220; Grim's Appeal, 8 Norris, 333. The construction of the will for which we contend, that is, that the testator gave, and intended to give to the widow only the usual dower as provided by the intestate laws of Pennsylvania, is sustained by the terms of the will itself. It seems to have been clearly so understood by all the parties interested. Proceedings under the will, and the settlement of the estate clearly show this. The appointment of an auditor was wholly unnecessary for any other purpose than to re-admeasure the widow's interest, and while not so expressed in the appointment, it was undoubtedly the main purpose in view. The auditor in his report says that he "sets a certain sum to the widow." It is too plain to admit of dispute, that he meant to say that a stipulated sum was "set apart for the widow." This is followed by the payment by the recognizors of interest upon this sum so set apart, clearly showing the understanding, arrangement and consummation in the Orphans' Court the extent of the widow's right and interest under the will.

*McEnally & McCurdy,* for defendant in error.—The widow was entitled to one third absolutely. The will gives her the one third of testator's property after debts are paid; and after the allowance of this one third to widow, the children are to have equal division of his property, both personal and real. Under the Act of April 8th, 1833, § 9, (Purdon 1475, pl. 10,) this is a devise of one third of the whole to the widow, and of the remainder to the children.

Mrs. White had a right to bring suit on the recognizance, in the name of the Commonwealth, to collect her share whatever it was: Commonwealth *v.* Lightner, 9 W. & S., 117. This action is as effectual for the purpose of enforcing her rights as would be an action of debt: 2 Troubat & Haly's Pr., §§ 1918 and 2053.

Mr. Justice GREEN delivered the opinion of the court, June 4th, 1885.

The will of the testator was intended to, and did, dispose of the whole of his estate. The contention here turns upon the character of the interest given to the widow. It does not seem to us that there is any obscurity as to the testator's meaning. He first directs that all his just debts, funeral expenses and other charges shall be paid out of his personal estate. Immediately following he adds, "Then my will is that the property, both personal and real remain as now is with my family for the term of one year. Then after the allowance of the one third of my property to the widow, my will is that all my children share and share alike including my step-son William." In the first of these sentences he directs the temporary retention of "the property" which he expressly defines as including "both personal and real." In the second he directs the division of the same subject matter, calling it "my property," manifestly using the word "property" in the same sense in both instances. Even without explanatory words the term "property," in such a connection, would import both realty and personalty. As to the personalty the widow would be entitled to one third absolutely without the will, and as to the realty, to one third of it during her life. But the testator aggregates them and says, "after the allowance of one third of my property to the widow my will is that all my children share and share alike." Certainly it could not be fairly said that he meant to give the widow a life interest only in his personal estate, and yet the words which give her an interest in the personal estate are the very same which give her an interest in the real estate, and the descriptive word employed to designate the subject of the gift is common to both. The word "allowance," if considered with reference to the personalty only, would undoubtedly be regarded as the equivalent of "bequest" or "gift." Why then should it not have the same significance when applied to the aggregate of the estate defined as "property?" The words "the allowance of one third of my property to the widow," are a designation of the proportion of the estate which the widow is to have. There are no words in the will which limit the estate or interest she is to take, and as the property is principally real estate, the ninth section of the Act of 8th April 1833 (Purdon 1475, pl. 10) becomes applicable and clothes her with a fee. The words of that section are, "All devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over or by words of limitation or otherwise in the will, that the testator intended to devise a less estate." As to the personalty, of course the interest vested is absolute. If the testator had said, "I allow to the

widow one tniru of my property," there could have been no question as to his meaning an absolute gift of the third part of his estate. It is a little singular that both the words of gift, and the subject matter of the gift, to the children, are less specific and certain than they are to the widow, until the remainder of the will is read. That which the children are to "share and share alike" is the remainder of the property after the allowance of one third to the widow. In other words the children take a part, a large part it is true, of the very same property of which the widow takes a part. No estate is defined to either class of devisees, not even by the words in brackets which follow, and say simply that the children shall have equal division of the property. We are clearly of opinion that under this will the widow took one third and the children two thirds of the testator's property in fee simple, and absolutely. This being so it would not have been in the power of the Orphans' Court to have taken from the widow her interest in the estate by any order they could have made in the proceedings in partition. But that court did not assume to do so. On the contrary the widow's interest in the valuation money was set apart to her absolutely, and only the remainder, two thirds of the whole, was distributed to the children. There was no decree that the interest only of the one third, $965.68, should be paid to her, nor was there any direction that the principal, $965.68, should be paid to the children after her death. The order for the recognizance simply said, as to the widow, that it should be given "to secure the interest of the widow" without saying what that interest was. The recognizance itself was given to secure the payment of the whole amount of the valuation money to the persons entitled to it without defining the shares of any. The persons entitled were called "other heirs of the said James White," but as the whole estate was given by will the persons who took it were entitled to it as devisees only, and not as heirs technically. Of these the widow was devisee by as good a title as the children. Nor did the recognizance assume to fix any sum of annual interest to be paid to the widow nor any annual interest whatever. It simply said "and shall pay the interest on so much thereof as interest should be paid on, to the widow of said James White, deceased, during each year of her life in equal semi-annual installments." This merely bound the recognizors to pay to the widow such interest as should be paid to her; but as her estate was not limited to annual interest, there was no annual interest payable to her simply as such, and the words of the recognizance did not change, or tend to change, the real character of her interest in the fund. Of course, she would be entitled to interest on

her share of the fund until the principal was paid, in the same manner as the other devisees. There is nothing in the doctrine of estoppel which would make it applicable to the widow in this case. She could take her interest as long as she chose, without in any manner depriving herself of her right to have the principal whenever she wished, just as any ordinary creditor might do with his debtor. These views dispose of all the contentions in the case, and fully justify the action of the learned court below.

Judgment affirmed.